NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____ :
                                    :
LUIS A. TORRES,                     :
                                    :  Civil Action No. 06-2176 (DRD)
          Petitioner,               :
                                    :
     v.                             :     O P I N I O N
                                    :
ALFARO ORTIZ, et al.,               :
                                    :
          Respondents.              :
_____ :


APPEARANCES:

Petitioner pro se               Counsel for Respondents
Luis A. Torres, #255751         Paul H. Heinzel
East Jersey State Prison        Deputy Attorney General
Lock Bag R                      Appellate Bureau
Rahway, NJ 07065                P.O. Box 086
                                Trenton, NJ 08625

DEBEVOISE, District Judge

     Petitioner Luis A. Torres, a prisoner currently confined at

East Jersey State Prison in Rahway, New Jersey, has submitted a

petition for a writ of habeas corpus, pursuant to 28 U.S.C.

§ 2254.  The respondents are Administrator Alfaro Ortiz and the

Attorney General of New Jersey.

     For the reasons stated herein, the petition will be denied.

## BACKGROUND

**A.**   **Factual Background**

The relevant facts are set forth in the opinion of the
Superior Court of New Jersey, Appellate Division.[1]

> The co-defendant, Gamboa, testified on behalf of
> the State that he and defendant had met in school and
> had known each [other] for about five months when on
> September 6, 1991, they carried out the armed robbery
> of the jewelry store.  They had planned the robbery the
> day before with Carlos Cruz who gave defendant the gun.
> The plan was to tie up the owner, Andy Shum.  Defendant
> was supposed to point the gun at the victim, getting
> him away from the alarm, while Gamboa tied him up.
> They planned to take Shum into the bathroom and then
> rob the store.  According to Gamboa, defendant told him
> that he knew the owner and had previously sold him
> stolen jewelry.
>
> On the day of the robbery, Gamboa was on the
> corner by the high school drinking with friends, when
> at about noon, defendant came along.  They hung around
> talking to girls until about 3:30 p.m.  At about 4:00
> p.m., they walked to the jewelry store.  Defendant had
> a black bag with the gun in it.  Gamboa carried a bag
> containing the rope.  When they arrived, Shum buzzed
> them in and defendant asked if he wanted to buy some
> jewelry.  Shum said that he did.  Defendant said they
> had to go get the jewelry and that they would be back
> later.  They went to the store that first time to check
> for alarms.  When they returned fifteen minutes later,
> defendant told Shum he had jewelry in the black bag.
> Defendant reached in the bag, took out the gun and shot
> Shum once in the neck from about three feet away, even
> though Shum had raised his hands.  About three seconds
> later, defendant again shot Shum in the temple at an

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

even closer range.  Shum died as a result of a
laceration and edema of the brain caused by that
gunshot wound.  Gamboa asked defendant why he had shot
Shum, and defendant answered that he had to because he
would recognize them.

(Opinion of Superior Court of New Jersey, Appellate Division,

dated June 11, 1998, at 6-7.)

B.   **Procedural History**

In September of 1991, three juvenile complaints were filed

against Petitioner and his co-defendant, Gamboa, charging them

with robbery and murder.  After a jurisdictional waiver hearing

conducted on January 22-24, 1992, both juveniles were waived to

adult court.

After pretrial hearings, and following a jury trial in the

Superior Court of New Jersey, Hudson County, Petitioner was

convicted of murder, felony murder, armed robbery, and related

charges.  On August 4, 1993, Petitioner was sentenced to an

aggregate term of life in prison, with 30 years parole

ineligibility.  On June 11, 1998, the Superior Court of New

Jersey, Appellate Division ("Appellate Division"), affirmed the

conviction and sentence.  On October 14, 1998, the Supreme Court

of New Jersey denied certification.  See State v. Torres, 156

N.J. 425 (1998).  Petitioner did not petition the United States

Supreme Court for a writ of certiorari.

Meanwhile, Petitioner embarked on a series of collateral

challenges to the conviction in state court.  Petitioner filed

his first state-court petition for post-conviction relief (PCR) on or about August 3, 1998.  The trial court denied relief on November 17, 1999.  By way of an Order entered on April 10, 2001, the Appellate Division reversed the trial court's denial of PCR and remanded for an "evidentiary hearing on the question of whether defendant had received effective assistance of counsel in the proceedings leading to his conviction . . . ."  On December 15, 2001, after an evidentiary hearing, the trial court again denied the petition.  The Appellate Division affirmed the denial of relief on October 31, 2003.  The Supreme Court of New Jersey denied certification on February 13, 2004.  See State v. Torres, 179 N.J. 310 (2004).

Petitioner filed a second state PCR petition on or about May 13, 2004.  The trial court denied relief on September 2, 2004. The Appellate Division affirmed the denial of relief on March 10, 2006.

This Petition, dated April 24, 2006, followed.  Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), on May 24, 2006.  An Order to Answer was issued and Respondents filed a Response to the Petition on November 1, 2006.

4

## DISCUSSION

**A.**   **Petitioner's Claims.**

Petitioner asserts the following eleven arguments for habeas relief:

I.      Failure of defense counsel or the court below to advise Defendant of his constitutional right to testify on his own behalf at the waiver hearing requires that the waiver ruling be vacated and a new hearing held.

II.     The Prosecutor's questions during trial and comments during opening statements and summation on Defendant's post-arrest silence denied Defendant his right to remain silent and deprived him a fair trial.

III.    The Prosecutor's improper questions, and improper remarks during summation were so egregious that Defendant was deprived of a fair trial.

IV.     The trial court denied Defendant his right to due process of law and a fair trial due to its woefully inadequate instruction to the jury on the law regarding how to evaluate credibility of Gamboa, an accomplice and the chief prosecution witness against the defendant.  In addition based on the facts of the case, the court should have sua sponte instructed the jury that the state could offer Gamboa a plea agreement or sentence reduction after trial.

V.      The court's instruction to the jury which erroneously defined the affirmative defense of duress and incorrectly stated the state's burden of proof as to duress; erroneously explained that accomplice liability could be proved by shared intent or participation; and erroneously instructed that a knowing state of mind was sufficient to prove accomplice liability, denied Defendant a fair trial.

VI.     Other crimes evidence, consisting of testimony from a detention officer that Defendant tried to bribe him, and testimony that Defendant had distributed cocaine to the co-defendant, admitted without a hearing and without limiting instructions, denied Defendant a fair trial.

VII.    Defendant's alleged statements to a detention officer should have been excluded because Defendant was questioned by the officer in a custodial setting without the benefit of Miranda warnings and in the absence of counsel.

VIII.    The double hearsay testimony of Detective Angermayer, relating what he was told by Gamboa, was inadmissible hearsay and denied the defendant a fair trial.

IX.    Post-conviction relief should be granted due to ineffective assistance of counsel, or alternatively this claim should be the subject of an evidentiary hearing.

X.    Post-conviction relief should be granted due to the state's discovery violation concerning a police interview of Carlos Cruz and Javier Garcia, an exculpatory witness.

XI.    Trial counsel failed to inform the petitioner of a potential conflict of interest due to multiple representation of the petitioner and his co-defendant by two attorneys from the same office, denied the petitioner the right to the effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution and the New Jersey Constitution.

(See Petition for Writ of Habeas Corpus, ¶ 12 and "Addendum II").

All issues have been presented to the New Jersey state courts either on direct appeal or in PCR proceedings.

**B.    <u>Standards Governing Petitioner's Claims.</u>**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held that under the "contrary to" clause, "a federal court may grant the writ if the state court arrives at a conclusion opposite to

7

that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. A federal court may grant the writ under the "unreasonable application" clause, if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" clause unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief. See id. at 411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v. Brennan, 528 U.S. 824 (1999). Thus, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent. See Werts, 228 F.3d at 197; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record. See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001).

In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id. Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence. See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)). "A finding that is well-supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520

9

(1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**C.   Claims Regarding Ineffective Assistance of Counsel (Points I, IX, and XI).**

1.   The *Strickland* standard

To begin, the "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering

all the circumstances." Id.  The Supreme Court further
explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential.  It is all too tempting for a
> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption
> that counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S.
1020 (1996).

If able to demonstrate deficient performance by counsel, the
petitioner must also show that counsel's substandard performance
actually prejudiced his defense.  See Strickland, 466 U.S. at
687.  Prejudice is shown if "there is a reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome." Id. at 694.  The reviewing court must evaluate the
effect of any errors in light of the totality of the evidence.

See id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  See id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

"[A]n attorney must investigate a case, when he has cause to do so, in order to provide minimally competent professional representation." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997); Lewis v. Mazurkiewicz, 915 F.2d 106, 111 (3d Cir. 1990)(counsel has a duty to investigate or to make a reasonable decision that makes particular investigations unnecessary).  When assessing an ineffectiveness claim based on failure to investigate, a court must assess the decision not to investigate "for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691; Kimmelman v. Morrison, 477 U.S. 365, 384 (1986); see also Duncan v. Morton, 256 F.3d 189, 201 (3d Cir.), cert. denied, 534 U.S. 919 (2001).  "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 691-92.  Even if counsel was deficient in his decision not to investigate, a petitioner must show a reasonable likelihood that, but for the deficiency, the result of the proceeding would have been different. See Lewis, 915 F.2d at 115.

12

2.  <u>Petitioner's Claims</u>

Petitioner argues in Point I of his Petition that the trial court erred, and defense counsel was ineffective for failing to advise him of his right to testify at the juvenile waiver hearing.  Petitioner argues that the record is void of any reference to counsel ever advising him of his right to testify, or any indication that counsel informed his parents that he had the right to testify at the waiver hearing.  Thus, Petitioner was not given the opportunity to present his testimony as to why he should not have been tried as an adult.  Petitioner states that this violated his due process rights, and that the decision to try Petitioner as an adult should be vacated.  Petitioner raised this claim on direct appeal.

In Point IX, Petitioner argues that trial counsel "failed to advise or inform him of his rights in any regard; failed to consult with him about his case or any defense strategy prior to the day of trial; failed to prepare him for critical hearings, trial, and in particular, his own testimony; failed to meet him to obtain information about his case and witnesses to [corroborate] his testimony; and failed to impeach the state's witnesses through their testimony."  Specifically, Petitioner contends that because the case was "Gamboa's word against that of Petitioner's," evidence tending to impair Gamboa's testimony or

to corroborate Petitioner's testimony was crucial.  Petitioner raised this claim in his PCR hearings.

Finally, in Point XI, Petitioner argues that both he and co-defendant Gamboa were represented by public defenders working within the same office.  Therefore, a conflict existed and created a "clear appearance of impropriety."  This claim will be denied, however, because in the course of his PCR proceedings, Petitioner raised this claim and the Appellate Division refused to discuss it, noting that it was not raised in the PCR proceedings before the trial court, and has since become time-barred, pursuant to N.J. Court R. 3:22-12(a).[2]

---

[2] Because this claim was procedurally rejected by the Appellate Division, Petitioner has procedurally defaulted on this claim.  As the Court of Appeals for the Third Circuit has explained:

A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice."

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002)(internal citations omitted).  To establish cause, a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements. Coleman v. Thompson, 501 U.S. 722, 753 (1991).  To establish a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime, McCleskey v. Zant, 499 U.S. 467, 494 (1991), typically by presenting new evidence of innocence, Schlup v. Delo, 513 U.S. 298, 316 (1995).

3.   Appellate Division decisions

As to Point I concerning his right to testify at the juvenile waiver hearing, Petitioner raised this claim on direct appeal.  The Appellate Division wrote extensively on this claim and denied it.  The Appellate Division stated, in relevant part:

> In a homicide proceeding against a juvenile, the waiver hearing is a critical stage.  This is so because once waiver occurs, the juvenile "loses all the protective and rehabilitative possibilities available to the Family Part."
>
> N.J.S.A. 2A:4A-26 creates a strong presumption that the Family Part shall transfer jurisdiction of a juvenile aged fourteen or over to an adult court if it finds probable cause to believe that the juvenile has committed a serious offense enumerated in the statute. The accused has the burden of showing that the probability of rehabilitation substantially outweighs the reasons for waiver.  The decision to waive jurisdiction and refer a juvenile complaint to the Law Division is discretionary and will not be disturbed unless it is shown that the exercise of discretion was abused.
>
> Our Legislature has accorded juveniles all rights given to adults charged with a crime . . . .
>
> Both federal and New Jersey law recognize that the accused in a criminal trial has the constitutional right to testify on his or her own behalf.  The United States Supreme Court found that this right is guaranteed by the Fifth Amendment privilege against self-incrimination, the Sixth Amendment rights to compulsory process and to conduct one's own defense, and the Fourteenth Amendment right to due process. Rock v. Arkansas, 483 U.S. 44, 51-53, . . . (1987).

_____

(Continued...)
In this case, Petitioner has failed to allege any cause for his procedural default in state court or any fundamental miscarriage of justice that would result from failure to consider his claims, thus this Court cannot grant relief.

The New Jersey Supreme Court has stated that a defendant's right to testify on his or her own behalf in a criminal trial is guaranteed by our State Constitution, and by statute.

The right to testify at one's trial is a fundamental right which can be waived "only by an 'intentional relinquishment or abandonment.'" However, the "waiver need not be on the record to withstand appellate scrutiny."

There is a constitutional tension inherent in requiring a trial court to advise a defendant of the right to testify or to inquire whether the defendant has waived that right.  Discussion of that issue with the accused "might 'inappropriately involve the trial court in the unique attorney-client relationship, raising Sixth Amendment as well as Fifth Amendment concerns.'" The decision of whether to testify belongs ultimately to the defendant, and it "is an important strategical choice, made by defendant in consultation with counsel."  Therefore, "when a defendant is represented by counsel, the trial court is not required to inform defendant of his right to testify or explain the consequences of that choice."

***

. . . Here, the record does not demonstrate that defense counsel admitted that he failed to inform defendant of his right to testify.  We reject defendant's assertion that it must be presumed that counsel failed to inform him of this right because the waiver of such a paramount constitutional right is routinely placed on the record.  If defendant had filed a motion for reconsideration of the waiver of jurisdiction, there would have been a hearing as to whether defense counsel informed defendant of his right to testify.  We cannot determine from the present record whether defendant was so advised and whether the waiver hearing was flawed.

Under [New Jersey case law], it is the responsibility of defense counsel, not the trial court, to advise a defendant on whether or not to testify and to explain the consequences of waiving that right. Although the Court suggested that it may be the better practice for the court to inquire of defense counsel

16

whether the defendant was advised of that right, it is
not mandatory.  Thus, the fact that the judge did not
make such an inquiry of defense counsel on the record
is not grounds for reversal.

Moreover, our Supreme Court . . . recognized that
not every claim of ineffective assistance of counsel at
a juvenile waiver hearing requires a new hearing.  To
secure a new hearing, a juvenile must make a prima
facie showing that "there was evidence of a genuine
potential for rehabilitation that counsel did not
present to the juvenile court."  If such a showing is
made, the appellate court may order a remand to the
juvenile court for a hearing: (1) to assess the
attorney's reasons for not presenting to the waiver
court the evidence of the potential for rehabilitation
and to determine whether that failure was due to the
ineffectiveness of counsel; and (2) to determine
whether the result of the waiver proceeding would have
been different if there had been a showing of that
potential by effective counsel.  If both tests are met,
there should be a new waiver proceeding.  However, if
the remand court determines that the best efforts of
competent counsel would not have prevented waiver
because the prospects for rehabilitation did not
substantially outweigh the reasons for waiver, then the
defendant's conviction in adult court stands.

In the present case, defendant has not asserted
ineffective assistance of counsel and does not claim
that his attorney failed to inform him of his right to
testify.  Rather, he argues that the record does not
indicate that he was so advised by his attorney.  That
contention does not rise to the level of a prima facie
showing that there was evidence of a potential for
rehabilitation that counsel did not present to the
juvenile court, requiring a remand hearing.  Further,
given the crime itself, it is unlikely that the result
of the waiver hearing would have been different had
defendant testified.  The sentencing court found in
refusing to consider defendant's youth as a mitigating
factor, that this was a cold-blooded and premeditated,
execution-style murder, and no mitigating factors were
found.  In light of the finding of the aggravating
factor of the need to deter, we fail to see how the
result would have been a denial of waiver.

17

(Opinion of Superior Court of New Jersey, Appellate Division, dated June 11, 1998, at 11-17)(internal citations omitted).

With regard to Petitioner's claims in Point IX, the Appellate Division found, first, that Petitioner's claims regarding ineffective assistance of appellate counsel and waiver counsel were previously summarily rejected by the court. With regard to Petitioner's arguments concerning trial counsel, the Appellate Division held:

> Defendant argues that he was deprived of the effective assistance of trial counsel because his trial counsel (1) allegedly failed to properly prepare him for testifying, and (2) did not interview certain fact and character witnesses.
>
> As to the first aspect, defendant's trial counsel testified at the post-conviction hearing that he did in fact spend time with defendant in preparation for his trial testimony. This testimony was unrefuted and the court below found trial counsel highly credible, a factual finding to which we defer. Accordingly, we reject defendant's contention that he was not adequately prepared for his testimony for the reasons expressed by the court below.
>
> As to the second aspect, the State acknowledged that defendant's trial counsel did not interview two potential fact witnesses (Javier Garcia and Carlos Cruz) as well as various character witnesses. Notwithstanding, the State contends that trial counsel's actions, as he testified at the post-conviction hearing, were consistent with his trial strategy and do not form the basis for a valid claim of ineffective assistance of counsel.
>
> In State v. Fritz, our Supreme Court embraced the two-prong test for evaluating ineffective assistance of counsel claims articulated in Strickland v. Washington. [The Appellate Division continued its discussion to set forth the Strickland factors].

In applying these standards, the court below concluded that trial counsel's failure to interview Cruz and Garcia was based upon a sound strategic judgment.  Based upon our review of the record, we find no reason to reject the reasoning of the court below.  At trial the State offered the testimony of Luis Gamboa as to his involvement with defendant in the murder of Andy Shum and the robbery of D'Oro Jewelry Store.  Gamboa had previously confessed and told police where the murder weapon could be found.  He also testified that he and defendant had planned the robbery and that defendant was the shooter.

Prior to trial, defense counsel received the statement of Luis Gamboa, which stated that it was Cruz who supplied defendant with the murder weapon.  Cruz's later statement, provided at the evidentiary hearing below, indicated that the murder weapon belonged to Gamboa, thus contradicting Gamboa's assertion at trial that Cruz would not have been helpful to the defense in that Cruz's supplying of the weapon would have caused him to face criminal charges and would have been detrimental to his credibility on cross-examination.

At the post-conviction relief hearing, defendant also relied upon a statement given by Garcia three years after trial, in which Garcia claimed that Gamboa had bragged about having possession of jewelry stolen from the D'Oro Jewelry Store and about being the shooter, both positions being inconsistent with Gamboa's testimony at trial.  Defendant's trial counsel did not interview Garcia in preparing a defense because he logically anticipated that Garcia would testify consistently with his prior statements an any testimony contrary to his earlier statements would not be viewed as credible.  Indeed, as defendant's trial counsel explained, Garcia's earlier statements would have been viewed more credibly than any later inconsistency he might have provided, given that it was Garcia who voluntarily approached the police, and informed them it was defendant who shot Shum, not Gamboa.  In addition, trial counsel was aware that on the second day of trial, Garcia advised State investigators that he had been threatened by fellow students for "ratting" on defendant, claiming that Garcia would have his throat slit if defendant did not get out of jail soon.  This, too, would undoubtedly have been explored during cross-examination to defendant's disadvantage.

19

Defendant also contends that trial counsel should have interviewed various character witnesses.  During the post-conviction hearing, trial counsel testified that he believed such testimony lacked value and was also concerned that these character witnesses, who were associated with defendant from high school, would have opened the door to testimony that defendant had been expelled from high school, hardly of assistance in cultivating defendant's character with the jury.  Trial counsel also reasonably concluded, in choosing not to call these character witnesses, that "[t]hese were kids whose judgment had not yet fully formed" and, thus, their young age would have had no positive effect.

Based upon our thorough review of the record, we find no basis for disturbing the findings of the court below that defendant's trial counsel's actions were based upon, and consistent with, a sound strategy and represented good judgment in light of testimony presented at trial.

(Opinion of Superior Court of New Jersey, Appellate Division, dated October 31, 2003, at 5-9)(internal citations omitted).

4.   <u>Analysis</u>

Petitioner has demonstrated neither that counsel's performance was deficient, nor that the results of the trial would have been different had the attorney acted as Petitioner now suggests.  A review of the trial transcripts reveals that Petitioner's counsel vigorously defended Petitioner.  Because a post-conviction relief hearing was held, a review of those transcripts also reveals that counsel performed adequately and was not deficient.

For example, with regard to Petitioner's argument that counsel was ineffective for not advising him of his right to testify at the waiver hearing, the PCR court hearing that claim

concluded, utilizing the <u>Strickland</u> standard, that "it is unlikely that the result of the waiver hearing would have been different had defendant testified." (Re33 at p. 23). The Appellate Division affirmed the PCR judge's decision noting that there was no evidence in the record that counsel did not inform Petitioner of his right to testify at the waiver hearing. The Appellate Division also noted that under New Jersey law, "not every claim of ineffective assistance of counsel at a juvenile waiver hearing requires a new hearing."

Besides the factual obstacles to Petitioner's argument that his counsel was ineffective for failing to advise him of his right to testify at the waiver hearing, that is, the fact that the record does not reflect that Petitioner was not so advised, Petitioner does not demonstrate a constitutional violation warranting habeas relief. "Petitioner does not identify any Supreme Court precedent which holds that a criminal defendant has a right to testify at a pre-trial hearing, it thus appears that the right asserted by petitioner is not clearly established." <u>DeVincentis v. Quinn</u>, 2007 WL 1059304 at *9-10 (W.D. Wash. Apr. 5, 2007)(Slip Copy); <u>see</u> <u>also</u> <u>United States v. Stewart</u>, 51 F. Supp.2d 1147, 1158 n.4 (stating that although it is clear that defendant makes the decision whether or not to testify at trial, it is not so clear in the pretrial hearing setting); <u>Gomez v. Duncan</u>, 2004 WL 119360 at *33-34 (S.D.N.Y. Jan. 27,

2004)(unpubl.)("The Supreme Court has not decided whether that personal right [to testify at trial] also extends to pretrial proceedings . . . .").

As the state courts have noted, under state law, it is likely that the serious crimes committed by Petitioner, described as "cold-blooded" and "premeditated" would have been waived to adult court regardless of whether or not Petitioner testified. Thus, from the record provided, it cannot be said that Petitioner's counsel was ineffective as it is clear that the second prong of Strickland has not been satisfied. Further, habeas relief is not warranted on this claim because Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Petitioner's claims regarding his trial counsel's performance in preparing him to testify and not interviewing fact witnesses also do not demonstrate ineffective assistance. The state courts held a PCR evidentiary hearing where Petitioner's trial counsel testified. Counsel set forth his reasons for not calling certain witnesses. The state courts found that his

reasoning was based on sound trial strategy, and did not demonstrate deficient performance. (Re34, Re35). Further, a review of the entire record demonstrates that counsel was an experienced, impelling, assertive advocate for Petitioner. For example, counsel argued vigorously and passionately to successfully have a mistrial declared prior to Petitioner's trial when he was not satisfied with the jury selection process. (Re23). Counsel also conducted an extensive cross-examination of Gamboa, totaling 65 pages in the trial transcript. (Re28).

Regardless, even assuming, arguendo, that Petitioner could satisfy the deficiency prong of Strickland, Petitioner has not demonstrated that counsel's actions prejudiced his defense. This Court agrees with the state courts that the requested witnesses would not have materially aided the defense; thus, Petitioner cannot establish prejudice based upon counsel's failure to subpoena the witnesses. A review of the record reveals overwhelming evidence against Petitioner, including the following: Petitioner's own statement to police that he was involved in the crime; Petitioner's testimony at trial that he was involved in the crime; Gamboa's testimony that Petitioner was the shooter; a witness statement (Garcia's statement as testified to by Detective Angermeyer) corroborating Gamboa's statement that Petitioner was the shooter; testimony by a corrections officer that Petitioner attempted to bribe him to implicate Gamboa as the

shooter; and forensic evidence regarding fingerprints and shell casings.  Thus, Petitioner's conviction was a result of a credibility determination made by the jury that Petitioner, not Gamboa, was the shooter, as well as a result of weighing all evidence presented.

Further, as the state courts applied the correct <u>Strickland</u> standard to Petitioner's claims and reasonably applied the facts, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  These grounds for a writ of habeas corpus, are therefore denied.

**D.    Claims Regarding Prosecutorial Misconduct (Points II, III).**

In Point II, Petitioner argues that the prosecutor made reference to his post-arrest silence during opening statements and during summation.  During opening statements, the prosecutor told the jury that Gamboa gave a statement as soon as the police stopped him, but that Petitioner did not give one until later that evening.  The prosecutor then argued on summation that one of the reasons that Gamboa was more credible than Petitioner was because he gave his statement "immediately."  Petitioner argues

that these statements denied his constitutional right to remain silent and his right to a fair trial.

In Point III, Petitioner argues that during summation the Prosecutor made arguments that denied him a fair trial.  These claims include:

- Prosecutor argued that his witness was telling the truth because he gave a statement immediately, as opposed to Petitioner;
- Prosecutor played on the emotions of the jury and invited them to make their determination based on such;
- Prosecutor repeatedly vouched for the credibility of witness Gamboa;
- Prosecutor misstated the facts when he advised the jury that they were eyewitnesses to the crimes, when in fact he was referring to photographs;
- Prosecutor mischaracterized Petitioner's testimony when he advised the jury that Petitioner had taken responsibility for the robbery;
- Prosecutor misstated the law and diluted the state's burden of proof;
- Prosecutor elicited testimony about Petitioner's poverty;
- Prosecutor elicited testimony from Petitioner that the state witness was lying;
- Prosecutor argued that the physical evidence and testimony proved Gamboa was telling the truth, amounting to testimony by the Prosecutor as an expert witness.

The Appellate Division, on direct appeal, summarized the relevant trial record concerning these claims by Petitioner. (Opinion of Superior Court of New Jersey, Appellate Division, dated June 11, 1998, at pp. 18-28).  The Appellate Division, after lengthy discussion, found that there was no unfair prejudice to Petitioner as a result of the prosecutor's remarks.

The U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ...  Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone.  Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence."  United States v. Young, 470 U.S. 1, 7 (1985).

Where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel.  See Darden, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must

examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

The Fifth Amendment self-incrimination clause, applicable to the States through the Fourteenth Amendment, bars prosecutors or judges from commenting on a defendant's failure to testify. See Griffin v. California, 380 U.S. 609, 615 (1965); Lesko v. Lehman, 925 F.2d 1527, 1541 (3d Cir. 1991). "The test for determining whether remarks are directed to a defendant's failure to testify is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" Bontempo v. Fenton, 692 F.2d 954, 959 (3d Cir. 1982)(quoting U.S. v. Chaney, 446 F.2d 571, 576 (3d Cir. 1971)).

In this case, this Court has reviewed the relevant record, the challenged remarks, and the state courts decision.  First, the Court notes that Petitioner did testify at his trial, waiving his Fifth Amendment rights.  Further, the prosecutor's comments challenged by Petitioner were not so offensive as to infect the entire trial, violate due process, or render his conviction unfair.  As mentioned in this Opinion, there was sufficient evidence to convict Petitioner, which was weighed by the jury.

In light of the entire trial and with the evidence against Petitioner, the Court is satisfied that the prosecutor's allegedly offensive actions did not violate Petitioner's right to a fair trial.

Moreover, the trial judge made clear in instructing the jury that they were the trier of facts.  The trial judge charged:

> As jurors, it's your duty to weigh the evidence calmly without passion, prejudice or sympathy.  Any undue influence caused by such emotion has the capacity to deprive both the State and the defendant of that which you promise them, namely a fair, impartial trial by fair, impartial jurors.
>
> Speculation, conjecture, other forms of guessing play no roll in the performance of your duty.  In my preliminary charge at the commencement of the case, I explain to you that you are the judges of the facts. As such, as judges of the facts, you are to determine the credibility of witnesses as well as the weight to be accorded to their testimony.
>
> You and you alone are the sole and exclusive judge's [sic] of the evidence, of the credibility of the witnesses, the weight to be attached to the testimony of each.
>
> In this connection, regardless of what Counsel has said or I may have said regarding the facts in the case, it's your recollection of the facts that should guide you as judges of the facts.  Although you must accept my view of the law, Counsel, the parties and I must accept your decision as to facts.
>
> Once again arguments, statements, remarks, summations of Counsel are not evidence, cannot be treated as such by you although such remarks may point out what Counsel deem important in this case, you must rely solely upon your understanding and recollection of the evidence that was admitted.

(Re30 at pp. 57-58).  Thus, even assuming that the prosecutor's remarks were improper, the judge's instruction was clear and correct and prevented the prosecutor's remarks from so infecting the trial with unfairness as to make the resulting conviction a denial of due process.

Finally, Petitioner has not demonstrated that the decision of the Appellate Division was either contrary to or an unreasonable application of clearly established federal law. Petitioner is not entitled to relief on these claims.

**E.    Claims Regarding Jury Instructions (Points IV and V).**

In Point IV, Petitioner argues that the trial court's jury instruction on "expectation of benefit" was totally inadequate, and that the accomplice liability charge should have been read. The trial court's charge "omitted the most crucial elements of the accomplice credibility charge."  Further, Petitioner argues, the trial court should have <u>sua</u> <u>sponte</u> instructed the jury that the state could offer Gamboa a plea agreement or sentence reduction after trial, whether or not it had done so before trial.

In Point V, Petitioner argues that the trial court's instruction on duress incorrectly defined the defense of duress. Further, he argues that the accomplice liability instruction erroneously allowed the jury to find accomplice liability based on a knowing rather than a purposeful state of mind.

These claims were presented to the Appellate Division on direct appeal.  The Appellate Division found these claims "in light of the entire record, . . . to be without sufficient merit to warrant discussion in this opinion.  We reject defendant's assertion that the errors, as alleged, because of their aggregate and cumulative impact, require reversal."  (Opinion of Superior Court of New Jersey, Appellate Division, dated June 11, 1998, at 41).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state

law." <u>Smith v. Horn</u>, 120 F.3d 400, 416 (1997).  <u>See also</u> <u>In re</u>
<u>Winship</u>, 397 U.S. 358, 364 (1970) ("the Due Process Clause
protects the accused against conviction except upon proof beyond
a reasonable doubt of every fact necessary to constitute the
crime with which he is charged"); <u>Sandstrom v. Montana</u>, 442 U.S.
510, 523 (1979) (jury instructions that suggest a jury may
convict without proving each element of a crime beyond a
reasonable doubt violate the constitutional rights of the
accused).

Where such a constitutional error has occurred, it generally
is subject to "harmless error" analysis.  <u>Smith v. Horn</u>, 120 F.3d
at 416-17; <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999).
"[I]f the [federal habeas] court concludes from the record that
the error had a 'substantial and injurious effect or influence'
on the verdict, or if it is in 'grave doubt' whether that is so,
the error cannot be deemed harmless." <u>Id.</u> at 418 (citing
<u>California v. Roy</u>, 519 U.S. 2, 5 (1996)).  In evaluating a
challenged instruction:

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

<u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004) (internal
quotations and citations omitted).

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence." Cool v. United States, 409 U.S. 100, 104 (1972). "[T]rial courts must avoid defining reasonable doubt so as to lead the jury to convict on a lesser showing than due process requires." Victor v. Nebraska, 511 U.S. 1, 22 (1994); see also Cage v. Louisiana, 498 U.S. 39, 41 (1990). As the Supreme Court explained in Victor,

> so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.

Victor, 511 U.S. at 6 (citations and internal quotation marks omitted).

"[A] misdescription of the burden of proof ... vitiates all the jury's findings." Sullivan v. Louisiana, 508 U.S. 275, 281 (1993) (emphasis in original). Such an error is considered structural and thus is not subject to harmless error review. See id. at 280-82. But see Neder v. United States, 527 U.S. 1, 8-11 (1999) (applying harmless-error analysis where jury was not instructed on an element of an offense).

In this case, the jury charges did not wrongly describe the burden of proof. Nor did the charge implicate due process

concerns.  The state courts did not find any error under state law with the charges, and this Court cannot ascertain any error that would rise to the level of a Constitutional deprivation.

In this case, a review of the record and the jury charge reveals that Petitioner has not demonstrated that his entire trial and conviction was so prejudiced by the charges as to violate the principles of fundamental fairness and due process. There was ample evidence against Petitioner to justify his conviction, including the forensics testimony, Petitioner's own statements, and the testimony of Gamboa.  Petitioner's conviction was based on a credibility determination by the jury, who chose to believe the state's witnesses over Petitioner's version of events.  Petitioner's conviction was neither fundamentally unfair, nor violated due process.

**F.   Claims Regarding Admitted Evidence (Points VI, VII, VIII).**

In Point VI, Petitioner argues that testimony from a detention officer that Petitioner tried to bribe him, and that Petitioner had distributed drugs to the co-defendant should have been excluded because its probative value was "far outweighed" by its prejudice.  In Point VII, Petitioner argues that statements made to a detention officer should have been excluded because he was in a custodial situation and did not receive Miranda warnings or counsel.  In Point VIII, Petitioner argues that testimony by a detective concerning the contents of a statement given to him by

a non-witness, were double hearsay and should not have been
admitted.

These arguments were raised in the state court on direct
appeal.  The Appellate Division discussed the issues raised by
Petitioner in Points VI and VIII.  As to the issue raised in
Point VI, that the testimony by the detention officer that
Petitioner tried to bribe him and had distributed drugs to the
co-defendant, the Appellate Division found that the evidence was
admissible, and was not "other crimes" evidence.  The Appellate
Division found that these other acts "were necessary to establish
the nature and context of the full criminal event."  Petitioner's
argument in Point VII, that statements he made to a detention
officer should have been excluded because Petitioner was not
afforded his <u>Miranda</u> rights, was found to be without merit and
did not warrant discussion.  (Opinion of Superior Court of New
Jersey, Appellate Division, dated June 11, 1998, at 36).  With
regard to the double hearsay argument raised by Petitioner in
Point VIII, the Appellate Division found that it was not plain
error under New Jersey law to admit the evidence, and that it was
not plain error to omit a cautionary charge.  (Opinion of
Superior Court of New Jersey, Appellate Division, dated June 11,
1998, at 33).

It is well-established that the violation of a right created
by state law is not cognizable as a basis for federal habeas

relief.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process.  See Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967)).

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial.  See Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Petitioner cannot meet that standard here.  The state courts have found that there was no error of state law in admitting the evidence.  To the extent the Petition can be construed as asserting a due process claim, this Court cannot discern any deprivation of due process in the admission of the evidence or the lack of cautionary charges.  Thus, Petitioner is not entitled to relief on these claims.

**G.   Claim Regarding Discovery Violation (Point X).**

Petitioner argues in Point X that the State failed to provide him with copies of the interview reports of two witnesses

that could have bolstered his case.  This argument was raised in the state court in Petitioner's PCR proceedings.  The Appellate Division rejected the argument, without discussion, in its Order dated April 10, 2001, and in its Opinion, dated October 31, 2003 affirming the denial of the PCR petition.

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." See also Giglio v. United States, 405 U.S. 150, 154 (1972) ("A finding of materiality of the evidence is required under Brady."); United States v. Bagley, 473 U.S. 667, 682 (1985) (in which the Supreme Court held that, regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different").  For Brady purposes, there is no distinction between exculpatory and impeachment evidence.  See Kyles v. Whitley, 514 U.S. 419, 432 (1995) (citing Bagley, 473 U.S. 667).

Nondisclosure merits relief only if the prosecution's failure "'undermines confidence in the outcome of the trial.'" Kyles v. Whitly , 514 U.S. 419, 434 (1995) (quoting Bagley, 473

36

U.S. at 678).  There is, however, "no general constitutional right to discovery in a criminal case, and <u>Brady</u> did not create one."  <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977) (citing <u>Wardius v. Oregon</u>, 412 U.S. 470, 474 (1973) ("the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded ... .")).

Here, the Court notes that the witness statements which Petitioner cites were clearly not exculpatory prior to trial, but rather were given after the trial during PCR hearings.  Both witnesses, prior to trial, gave initial statements implicating Petitioner as a shooter, then later changed their stories.  As explained by the Appellate Division on PCR appeal:

> Prior to trial, defense counsel received the statement of Luis Gamboa, which stated that it was Cruz who supplied defendant with the murder weapon.  Cruz's later statement, provided at the evidentiary hearing below [on PCR], indicated that the murder weapon belonged to Gamboa, thus contradicting Gamboa's assertion at trial that defendant received the weapon from Cruz. ...

> At the post-conviction relief hearing, defendant also relied upon a statement given by Garcia three years after trial, in which Garcia claimed that Gamboa had bragged about having possession of jewelry stolen from the D'Oro Jewelry Store and about being the shooter, both positions being inconsistent with Gamboa's testimony at trial.

(Re16 at pp. 7-8).  Thus, based on the facts of this case, this Court finds no due process violation and no evidence that the outcome of the trial was undermined by any discovery failure.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability will issue.

### CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  An appropriate Order accompanies this Opinion.


**/s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE
United States District Judge
Dated:    April 26, 2007

38